# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

VIRGINIA LEE WHITEHEAD,     )
                            )
            Plaintiff,     )
                            )
v.                          )     Case No. CIV-15-422-JHP-SPS
                            )
NANCY A. BERRYHILL,         )
Acting Commissioner of the Social )
Security Administration,[1] )
                            )
            Defendant.     )

## REPORT AND RECOMMENDATION

The claimant Virginia Lee Whitehead requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on August 20, 1956, and was fifty-seven years old at the time of the administrative hearing (Tr. 35, 129). She completed the twelfth grade, and has worked as a toll collector (Tr. 29, 144). The claimant alleges she has been unable to work since May 1, 2008, due to degenerative disc disease, back injury, depression, and arthritis (Tr. 143).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on October 6, 2011. Her application was denied. ALJ Deborah L. Rose conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated June 20, 2014 (Tr. 20-30). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made her decision at steps four and five of the sequential evaluation. She found the claimant retained the residual functional capacity ("RFC") to perform less than the full range of light work as defined by 20 C.F.R. § 404.1567(b), *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently, and could stand/walk

and sit six hours in an eight-hour workday. Additionally, the ALJ determined that the claimant could perform simple tasks, concentrate and attend for two-hour periods, interact with supervisors and coworkers, and adapt to a work situation adequately in order to complete a normal work week without excessive interruption from psychological symptoms (Tr. 25). The ALJ thus concluded that the claimant could return to her past relevant work as a toll collector. Alternatively, the ALJ found that, with the transferable skills of money handling and customer service, the claimant could also perform the work of a check cashier (Tr. 29).

## Review

The claimant asserts that the ALJ erred by: (i) giving great weigh to a state reviewing physician opinion but omitting some of the findings related to her RFC, (ii) failing to make the proper findings regarding her past relevant work, (iii) failing to make proper findings regarding her level of functioning, and (iv) making improper step five findings. The undersigned Magistrate Judge agrees that the ALJ failed to reconcile discrepancies relevant to the claimant's RFC, and the case should be reversed.

The ALJ found that the claimant had the severe impairments of depression, degenerative disc disease, and history of right shoulder injury (Tr. 22). Medical records reflect that Dr. Nagamanohar Javvaji treated the claimant from 2007 through at least 2014 for impairments including hypothyroidism, depression, GERD, and degenerative joint disease (Tr. 226-260).

On December 28, 2011, Dr. Traci Carney completed a consultative physical examination of the claimant. Dr. Carney assessed the claimant with low back pain due to

degenerative disc disease, hypothyroidism, hypertension, depression, and osteoarthritis, and further noted decreased back flexion with pain (Tr. 263-267).

On February 6, 2012, Dr. Larry Vaught completed a mental status examination of the claimant, in which he noted that the claimant had a restricted affect in social functioning, and was at times tearful (Tr. 270). Additionally, he noted she reported difficulty with a number of activities, that she did not feel like doing much, and that she had difficulty sleeping (Tr. 270). Finally, he noted that she was mildly slowed in concentration, persistence, and pace, and that attention/concentration and memory were low average, but that calculation, abstraction, and basic judgment were intact (Tr. 271). He assessed her with major depressive disorder that was recurrent and moderate without psychotic features (Tr. 271).

On March 4, 2012, state reviewing physician Amy Hudson, Ph.D., completed PRTF and mental RFC assessment forms. Dr. Hudson found that the claimant had mild degrees of limitation in the areas of restriction of activities of daily living and maintaining social functioning, as well as moderate difficulties in maintaining concentration, persistence, and pace, and one or two episodes of decompensation (Tr. 286). Dr. Hudson then summarized the medical evidence and concluded that she would be capable of performing routine, repetitive tasks without excessive interruptions from psychologically based symptoms (Tr. 288). On the mental RFC form, Dr. Hudson indicated that the claimant was moderately limited in: the ability to remember locations and work-like procedures, the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and

concentration for extended periods, the ability to respond appropriately to changes in the work setting, and the ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 272-273). She then stated that the claimant could understand and remember simple instructions and carry out those tasks, concentrate and attend for two-hour periods, interact with supervisors and co-workers, and adapt adequately in order to complete a normal work week without excessive interruption from psychologically based symptoms (Tr. 274).

On July 10, 2012, Dr. Ronald Schatzman completed a physical examination of the claimant. He noted that she had full range of motion and assessed her with all the following impairments, by history: back pain, obesity, depression, tobacco abuse, and thyroid disease (Tr. 315).

An August 22, 2012 scan of the spine revealed transitional lumbosacral anatomy with lumbarization of S1, mild dextrocurvature of the lumbar spine, and mild multilevel degenerative endplate spurring (Tr. 320).

In her written opinion, the ALJ summarized the claimant's hearing testimony, as well as the medical evidence in the record. The ALJ gave Dr. Hudson's PRTF and mental RFC assessment both great weight, then found that her assessed RFC was supported, in part, by Dr. Hudson's assessments (Tr. 29). The claimant argues that, despite affording her opinion great weight, the ALJ nevertheless failed to properly assess Dr. Hudson's opinion because she failed to account for Dr. Hudson's PRTF limitations regarding routine, repetitive tasks.

Social Security Ruling 96–6p instructs that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4 (July 2, 1996). These opinions are to be treated as medical opinions from non-examining sources. *Id.* at *2. Although the ALJ is not bound by a state agency physician's determination, she cannot ignore it and must explain the weight given to the opinion in her decision. *Id. See also Valdez v. Barnhart,* 62 Fed. Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it.") [unpublished opinion], *citing* 20 C.F.R. § 416.927(f)(2)(ii). Here, the ALJ's sum total assessment related to Dr. Hudson's opinions was that he gave them "great weight (Tr. 29). The ALJ found that that the claimant could perform simple tasks, could concentrate and attend for two-hour periods, and could complete a normal work week without excessive interruption from psychological symptoms. The ALJ did not, however, discuss Dr. Hudson's statement that the claimant was capable of performing *routine, repetitive tasks* without interruption from psychologically-based symptoms, and made no explanation as to whether "simple" work would allow the claimant to work without interruption in the same way. *See, e.g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

The government argues that Dr. Hudson's statements were not part of her RFC assessment, and that the ALJ's RFC assessment was reconciled with Dr. Hudson's mental RFC assessment. The Commissioner further asserts that the jobs identified by the ALJ, her past relevant work as a toll collector and the newly-identified position of check cashier nevertheless account for any limitation identified by Dr. Hudson. The undersigned Magistrate Judge, however, finds that the jobs identified *do not* account for those limitations, with regard to the reasoning level requirements. The VE identified as work the claimant could perform with the associated RFC the past relevant work of toll collector, as described in the Dictionary of Occupational Titles (DOT) at DICOT § 211.462-038, as well as the new position of check cashier, DICOT § 211.462-026. Both jobs have a reasoning level of 3, which require a worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations" *see* DICOT §§ 211.462-038 and 211.462-026. The reasoning levels for jobs in the DOT best identify the level of simplicity (or, conversely, complexity) associated with the job. *See Cooper v. Barnhart,* 2004 WL 2381515, at *4 (N.D. Okla. Oct. 15, 2004) ("The reasoning level, as identified by Plaintiff, appears more similar to whether or not a claimant has a limitation to performing only simple tasks.") [citations omitted]. If a claimant is limited to simple tasks, it stands to reason that a job requiring the ability to understand and carry out detailed but uninvolved written or oral instructions (a reasoning level 2) would create a conflict. *See McKinnon v. Astrue,* 2010 WL 3190621, at *5 (D. Colo. Aug. 12, 2010); *Allen v. Barnhart,* 2003 WL 22159050, at *10 (N.D. Cal. Aug.

28, 2003) (examining the requirements of the GED reasoning level of 2 and finding that "[t]he need to follow 'detailed' and 'involved' instructions exceeds the ALJ's limitation of plaintiff to 'simple, routine tasks.' Such instructions are not simple and uncomplicated, or limited to one or two steps."). "[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary [of Occupational Titles] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel,* 196 F.3d 1084, 1091 (10th Cir. 1999). *See also Krueger v. Astrue,* 337 Fed. Appx. 758, 760–762 (10th Cir. 2009) (reversing and remanding in part because the ALJ failed to resolve a conflict between VE's testimony and DOT job descriptions); *Poppa v. Astrue,* 569 F.3d 1167, 1173 (10th Cir.2009) (noting that SSR 00–4p "requires that an ALJ must inquire about and resolve any conflicts between a [VE's] testimony regarding a job and the description of that job in the [DOT]"); *Hackett v. Barnhart,* 395 F.3d 1168, 1175 (10th Cir. 2005) (applying *Haddock* to nonexertional limitations). Furthermore, "[t]he [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. Here, there *is* a conflict that the ALJ was required to resolve. *See Haddock*, 196 F.3d at 1091.

Although the unresolved conflict as to the claimant's mental limitations would have been harmless error if other jobs had been identified that did not pose a conflict, they are not harmless here because both jobs identified had a reasoning level of 3. *See Stokes v. Astrue,* 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding that any error on whether claimant could perform jobs was harmless error since there were still two jobs

claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country.").

For the reasons set forth above, the undersigned Magistrate Judge finds that the decision of the Commissioner should be reversed and the case remanded to the ALJ for proper analysis of the medical opinions of record. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 1st day of March, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**